# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ARGONAUT INSURANCE COMPANY, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 11-CV-0396-CVE-PJC |
| ) | |
| BUDDY R. EARNEST, ) | |
| ) | |
| **Defendant and** ) | |
| **Counter Claimant.** ) | |

## OPINION AND ORDER

Now before the Court are Defendant/Counter Claimant Buddy R. Earnest's Motion for Summary Judgment and Brief in Support (Dkt. # 25) and Plaintiff's Motion for Summary Judgment and Brief in Support (Dkt. # 26). Plaintiff filed this declaratory judgment action seeking a declaration that defendant is not an insured under the insurance policy issued by plaintiff to Creek County Commissioners, Oklahoma for purposes of uninsured motorist (UM) coverage. In the alternative, if the Court finds that defendant is an insured under the policy, then plaintiff requests that the Court find that the limit of UM coverage is $125,000 per person. Defendant has filed a counter claim against plaintiff requesting that the Court enter an order declaring that defendant is an insured under the policy and that the policy limit available to defendant is $1,000,000. Both parties have moved for summary judgment.

## I.

The material facts are not in dispute; however, the parties disagree as to the legal effect of those undisputed facts. On September 1, 2010, plaintiff Argonaut Insurance Company issued a commercial auto insurance policy (the policy) to Creek County Commissioners, OK (Creek County) with a policy period of September 1, 2010 through September 1, 2011. The policy includes a

Business Auto Coverage Form, which outlines the auto liability coverage, and an endorsement entitled "Oklahoma Uninsured Motorists Coverage" (UM endorsement), which outlines coverage provided for damages caused by uninsured motorists. During the relevant time period, defendant Buddy R. Earnest was an employee of Creek County Oklahoma.

On October 14, 2010, defendant was injured during the course of his employment. Defendant, along with at least five of his co-workers, was engaged in resurfacing a road using a chip-sealing process. The chip-sealing process was being performed by workers in three different vehicles or mobile pieces of equipment: the oil distributor truck, the chip sealer (chipper), and the dump truck. These vehicles were moving along the road in caravan style. The oil distributor truck led the caravan and was approximately 15-20 feet in front of the chipper. The oil distributor truck was not attached to the chipper. Following the oil distributor truck was the chipper, followed by the dump truck. The chipper and the dump truck were connected to one another, and it is the precise nature of this connection and movement that is dispositive in this litigation.

The dump truck, traveling at the back of the caravan, was positioned backwards and operating in reverse. The rear of the dump truck was connected to the rear of the chipper by a steel bar. As the dump truck moved along the road, in reverse, it pushed the chipper forward.[1] The bed

---

[1] Plaintiff alleges in its complaint and summary judgment motion that the chipper was pulling the dump truck. Dkt. # 2 at 3; Dkt. # 26 at 3. However, plaintiff has not submitted any evidence supporting this allegation. On the other hand, defendant submitted affidavits from five of the workers who were present at the accident, including defendant and the driver of the dump truck, each of which state that the dump truck was pushing the chipper. Dkt. ## 25-1, 25-2, 25-3, 25-4, 25-5. Further, in its response to defendant's summary judgment motion, plaintiff does not contest defendant's statement of the facts, including the statement that the dump truck was pushing the chipper. Dkt. # 28 at 2. Plaintiff also concedes that "[a]t most, the dump truck was 'pushing' the chipper at various times as they performed operations." Dkt. # 28 at 2. Thus, the only evidence in the summary judgment record demonstrates that the dump truck was pushing the chipper at the time of the accident.

of the dump truck was raised so that it could feed gravel into the chipper. Defendant was riding on the front of the chipper, controlling the flow of "chips" onto the road. At some point in this process, the oil distributor truck stopped due to a clogged nozzle. The driver of the oil distributor truck did not communicate to his co-workers that he had stopped the truck. Because the bed of the dump truck was raised, the driver of the dump truck could not see that the oil distributor truck had stopped. Thus, the dump truck continued pushing the chipper forward until the chipper struck the back of the oil distributor truck. Defendant's leg was caught between the oil distributor truck and the chipper, causing injury to defendant.

At some time after the accident, defendant submitted an uninsured motorist claim to plaintiff for defendant's personal injuries.[2] Plaintiff denied the claim, stating that defendant "cannot be considered an insured under the . . . Business Auto policy for purposes of UM coverage [because he] was not 'occupying' a covered 'auto' for purposes of UM benefits." Dkt. # 25-6 at 4. Plaintiff filed this declaratory judgment action for a determination of whether defendant is covered under the policy and, if he is, the extent of such coverage.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986);

---

[2]  The summary judgment record does not contain the date or amount of defendant's claim. The claim was submitted as an UM claim because defendant's co-employees are immune from suit by Oklahoma statute and are therefore considered "uninsured." See Torres v. Kan. City Fire & Marine Ins. Co., 849 P.2d 407, 410-11 (Okla. 1993). Plaintiff does not dispute that UM coverage is available to defendant if he qualifies as an insured under the policy. Dkt. # 26 at 2.

Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(a) mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998). In diversity cases governed by state law, this Court must ascertain and apply the state law so as to reach the same result that the state court would reach. Pub. Serv. Co. of Okla. v. Burlington N. R .R. Co. 53 F.3d 1090, 1096 (10th Cir. 1995).

**III.**

As noted above, there is no genuine dispute as to any material fact. Each party asks the Court to interpret the insurance policy as a matter of law to determine: (i) whether defendant is an insured under the policy for purposes of UM benefits; and (ii) if defendant is entitled to coverage, the limits of that coverage. Under Oklahoma law, "insurance polices are contracts interpreted as a matter of law." BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co., 148 P.3d 832, 835 (Okla. 2005). "When policy provisions are unambiguous and clear, the employed language is accorded its ordinary, plain meaning; and the contract is enforced carrying out the parties' intentions." Id. "The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." Orthopedic Resources, Inc. v. Nautilus Ins. Co., 654 F. Supp. 2d 1307, 1312 (N.D. Okla. 2009).

**A.    Defendant's Entitlement to Coverage**

Under the policy, an insured is "[a]nyone 'occupying' a covered 'auto' . . ." Dkt. # 26-1 at 50. Plaintiff concedes that defendant was "occupying" the chipper. Dkt. # 28 at 5. Thus, the only issue to be determined is whether the chipper was a covered "auto" at the time of the accident.

The policy states that UM coverage is available for "owned 'autos' only." Dkt. # 26-1 at 30; 26-1 at 1. The parties agree that the dump truck is listed as a covered "auto" under the policy, while the chipper is not. Dkt. # 25 at 13; Dkt. # 26 at 9. Instead, the chipper falls under the policy's definition of "mobile equipment." Dkt. # 25 at 13; Dkt. # 26 at 9. However, "mobile equipment" will be considered a covered "auto" under the policy when it is "being carried or towed by a covered 'auto.'" Dkt. # 26-1 at 31. Thus, if the chipper was being "carried or towed" by a covered auto (the

5

dump truck) at the time of the accident, then the chipper was a covered auto and defendant is entitled to coverage.

The terms "carried" and "towed" are not defined in the policy. The parties have not cited any legal authority reflecting how Oklahoma courts have defined these words in an insurance policy, and the Court is not aware of any such authority.[3] In determining whether the chipper was being carried or towed by the dump truck, the Court must look to the plain and ordinary meaning of the terms. See BP Am., Inc., 148 P.3d at 835. Using the definition cited by plaintiff, to "carry" means to "move while supporting or holding; take from one place to another; transport" or to "serve as a medium for the transmission of" or "to be the means of conveying."[4] Dkt. # 26 at 10 (citing Random House Webster's College Dictionary 209 (1992)). It is undisputed that the dump truck was pushing the chipper in order to move the chipper along the road. Thus, the dump truck was the means by which the chipper was being conveyed from one place to another.

---

[3] Plaintiff cites three cases from other jurisdictions, which hold that a piece of mobile equipment was not being carried or towed under policy language similar to the language here. See N. Ins. Co. of N.Y. v. Reilly, 323 F. Supp. 2d 648, 649 n.2 (E.D. Pa. 2004); Gen. Cas. Ins. Co. v. Shaw Trucking, Inc., No. A04-1341, 2005 WL 1020919, at *4 (Minn. Ct. App. May 3, 2005) (unpublished); D&M Logging Co. v. Huffman, 427 S.E.2d 244, 247 (W. Va. 1993). The Court does not find these cases persuasive. First, because these cases are from other jurisdictions, they do not shed any light on how an Oklahoma court might interpret this policy. Second, these cases are factually distinguishable from the present case. Third, two of the cases cited do not contain any discussion as to why the courts found that the equipment was not being carried or towed, nor is there any suggestion that the parties raised the issue.

[4] Courts interpreting insurance policies under Oklahoma law routinely refer to dictionary definitions in determining the plain and ordinary meaning of an unambiguous term. See, e.g., S. Hospitality, Inc. v. Zurich Am. Ins. Co., 393 F.3d 1137, 1140 (10th Cir. 2004); Ellis v. State Farm Fire & Cas. Co., 322 Fed. Appx. 594, 597 (10th Cir. 2009) (unpublished); Hollingshead v. Blue Cross & Blue Shield of Okla., 216 Fed. Appx. 797, 802 (10th Cir. 2007) (unpublished). Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

To "tow" means, as cited by plaintiff, to "pull or haul (car, barge, trailer, etc.) by a rope, chain or similar device." Dkt. # 26 at 10 (citing Random House Webster's College Dictionary 1411 (1992)). The dump truck was moving the chipper forward by means of a steel bar. While the dump truck was pushing the chipper rather than "pulling" it, the Court does not find this distinction to be determinative given the facts of this case. To interpret "towing" so narrowly would mean that had the dump truck been moving forward, rather than in reverse, an injury would be covered, but under the present circumstances it is not. Surely, plaintiff would not argue that, if a tow truck towing a car had to move in reverse momentarily, any damages sustained in an accident would not be covered. This would yield an absurd result, whereby a piece of mobile equipment would be a covered auto one moment, but not the next, depending on the gear in which the towing vehicle was moving. Such an absurd result must be avoided. See Orthopedic Resources, Inc. v. Nautilus Ins. Co., 654 at 1312. Given the facts of this case and the policy language at issue, the Court finds that the chipper was being "carried or towed" by the dump truck within the meaning of the policy.

Plaintiff argues that the chipper was not being "carried or towed" by the dump truck at the time of the accident because the chipper was "functioning as a chipper [and] . . . was not in transit to another work site, . . . but was accomplishing the task for which it was designed." Dkt. # 26 at 10. However, such a restriction is simply not found in the plain language of the policy. There is no language in the policy stating that a piece of mobile equipment is being "carried or towed" only when it is not functioning or not being used for the task for which it was designed. Plaintiff certainly could have added such language to the contract, but it did not. As noted above, under the plain and ordinary definition of the words, the chipper was being "carried or towed" at the time of

the accident. The plain language of the policy does not require the additional element of "not being in use."

Having carefully considered the undisputed facts and the policy language at issue, the Court finds that the chipper was being carried or towed by the dump truck at the time of the accident. Thus, the chipper was a covered "auto" under the policy. Because defendant was occupying a covered auto at the time of the accident, defendant is an insured under the policy and is entitled to UM coverage.

**B.      Policy Limit**

Having determined that defendant is entitled to coverage under the policy, the Court must determine the limit of the UM coverage. Plaintiff argues that defendant's UM coverage is limited to $125,000. Defendant argues that he is entitled to up to $1,000,000 in UM coverage.

Before examining the language of the policy, the Court looks to the Oklahoma statute governing UM coverage. Oklahoma law provides that any automobile insurance policy that insures against loss resulting from liability must also include UM coverage. OKLA. STAT. tit. 36, § 3636. The statute states that the uninsured motorist coverage "shall be not less than the amounts or limits prescribed for bodily injury or death . . .; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured." Id. Thus, in determining the amount of UM coverage, Oklahoma courts have held that "uninsured motorist coverage shall not exceed the amount of liability coverage." Gray v. Midland Risk Ins. Co., 925 P.2d 560, 560 (Okla. 1996); see also Lake v. Wright, 657 P.2d 643, 645 (Okla. 1982). "[T]he purpose of permitting an insured to purchase increased UM limits is to give the insured the right, if he desires, to be protected to the same extent, but not to exceed,

the liability coverage he purchases to protect others." Davis v. Equity Fire & Cas. Co., 852 P.2d 780 (Okla Civ. App 1993) (citing Lake, 657 P.2d at 645). The Court must "interpret the policy in light of the statute, but will not rewrite the contract." Gray, 925 P.2d at 562.

The Business Auto Coverage Form of the policy, Section II(C), states that the limit of insurance for liability coverage[5] is the amount shown in the Declarations. Dkt. # 26-1 at 34. The Declarations state that the "most [plaintiff] will pay for any one accident or loss" for liability is $1,000,000. Dkt. # 26-1 at 1. The Business Auto Coverage Form is modified by the Split Liability Limits for Governmental Subdivisions - Oklahoma Endorsement (split liability endorsement). Dkt. # 26-1 at 53. The split liability endorsement replaces the limit of liability coverage provided for in the Business Auto Coverage Form with a provision that states that the "most [plaintiff] will pay for all damages resulting from 'bodily injury' to any one person caused by any one 'accident' . . . is $125,000." Id. The split liability endorsement further provides that "the most [plaintiff] will pay for all damages resulting from any one 'accident' is $1,000,000." Id. Reading the Business Auto Coverage Form, the Declarations, and the split liability endorsement together, the limit provided in the policy for bodily injury liability is $125,000 per person, with a limit of $1,000,000 per accident.

The Business Auto Coverage Form is also modified by the UM endorsement, which provides that, for UM coverage, "the most [plaintiff] will pay for all damages resulting from any one 'accident' is the limit of Uninsured Motorists Insurance shown in the Schedule or Declarations." Dkt. # 26-1 at 50. The Declarations page of the policy states that, for UM coverage, "the most plaintiff will pay for any one accident or loss" is $1,000,000. Id. at 1. In addition, the "Schedule"

---

[5] The Liability Coverage section of the policy states that plaintiff "will pay all sums an 'insured' must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies . . . ." Dkt.# 26-1 at 31.

9

on the uninsured motorist endorsement states that the "Limit of Insurance" is $1,000,000 for "Each 'Accident.'" Id. at 49. Thus, a plain reading of the policy shows that the most plaintiff will pay for UM coverage is $1,000,000 per accident.

Defendant argues that the split liability endorsement limiting liability coverage to $125,000 per person does not apply to the UM endorsement and that, based on the UM endorsement, he is entitled to up to $1,000,000 in coverage. However, defendant's argument ignores the fact that Oklahoma law does not permit the UM coverage to exceed the coverage available for bodily injury liability. OKLA. STAT. tit. 36, § 3636. Defendant concedes that the policy limits coverage for bodily injury liability to $125,000 per person and $1,000,000 per accident. Dkt. # 29 at 26. Thus, based on OKLA. STAT. tit. 36, § 3636, the uninsured motorist coverage must also be limited to $125,000 per person and $1,000,000 per accident. See Gray, 925 P.2d at 562-63 (reducing uninsured motorist limit to amount of bodily injury limit based on statute even though "policy did not specifically provide for reduction of uninsured benefits").

Defendant argues that interpreting the policy in this way makes the $1,000,000 limit stated in the UM endorsement illusory. This argument is unavailing. The UM endorsement states that the coverage limit is $1,000,000 per accident. Dkt. # 26-1 at 1, 49-50. This per accident limit is not reduced by the Oklahoma statute because the bodily injury liability in the policy is also $1,000,000 per accident. Thus, the per accident limit of $1,000,000 is in compliance with the statute because it does "not exceed the limits provided in the policy of bodily injury liability of the insured." OKLA. STAT. tit. 36, § 3636. However, the UM limit per person must be reduced to $125,000 in order to be in compliance with the statute. Because the UM endorsement is silent as to any limit in coverage per person, interpreting the contract in this way is not in conflict with the plain language of the policy.

10

For these reasons, the Court finds that the limit of UM coverage per person is limited to $125,000.

**IT IS THEREFORE ORDERED** that Defendant/Counter Claimant Buddy R. Earnest's Motion for Summary Judgment and Brief in Support (Dkt. # 25) is **granted in part and denied in part**, and Plaintiff's Motion for Summary Judgment and Brief in Support (Dkt. # 26) is **granted in part and denied in part.** The Court declares that defendant is an insured under the policy, and that the uninsured motorist benefits are limited to $125,000 per person. A separate judgment is entered herewith.

**DATED** this 21st day of March, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE